UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**ANTHONY GRIFFIN**                                                            **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 1:12CV-P174-M**

**SOUTHERN HEALTH PARTNERS, INC.** *et al.*                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Griffin, a pretrial detainee proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1).  He has also filed two letters which the Court construes as motions to amend the complaint (DNs 15 & 16).  Construed as such, the motions (DNs 15 & 16) are **GRANTED**.

This matter is before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  In its initial review, the Court will address the allegations contained in the complaint as well as the additional allegations contained in the amendments (DNs 15 & 16).  For the reasons set forth below, the Court will allow four claims involving Plaintiff's incarceration in the medical detox cell from September 10-12, 2012, to proceed against Defendants Pruitt and Brown in their individual capacities: 1) retaliation; 2) conditions of confinement; 3) due process; and 4) medical treatment for Plaintiff's back pain and hip spasms allegedly resulting from Plaintiff's incarceration in the medical detox cell. Additionally, the Court will allow the state-law claim of negligent supervision to proceed against Defendant Strode.  All other claims and Defendants will be dismissed from this action.

## I.  SUMMARY OF CLAIMS

Plaintiff originally brought this action against three Defendants: Southern Health Partners, Inc; Jackie Strode, Head Jailer at the Warren County Regional Jail [WCRJ]; and Jamie Pruitt, Medical Staff Coordinator at the WCRJ.  In his first amendment to the complaint, he

names a fourth Defendant, Barbara Brown.  According to Plaintiff, Defendant Brown is a nurse at the WCRJ.  In the complaint and first amendment, Plaintiff complains about events that occurred in September 2012.  In his second amendment to the complaint, Plaintiff names two additional Defendants, Dustin Lee and Chad Whittaker.  According to Plaintiff these two Defendants are correctional officers at the WCRJ.  In the second amendment Plaintiff complains about events that occurred in January 2013.

Southern Health Partners, Inc. is sued in its official capacity.  Defendants Strode and Pruitt are sued in both their official and individual capacities.  Defendants Brown, Lee, and Whittaker are sued only in their individual capacities.  As relief, Plaintiff asks for monetary damages, punitive damages, unspecified injunctive relief, and "other relief as it may appear that Plaintiff is entitled."

In his complaint and first amendment, Plaintiff states that on September 7, 2012, he submitted a sick call slip.  He states that the medical staff did not call him about this sick call slip.  However, on September 10, 2012, as a result of this sick call slip, Plaintiff states that he was put in medical observation "without no knowledge."  Plaintiff contends that this "excessive confinement" was ordered by Defendants Pruitt and Brown.  Plaintiff states that once he was placed in medical observation "[t]hese two Nurse's [ ] cut the water off" and failed to observe him.

According to Plaintiff the cell in which he was placed was a "Detox-cell."  He states that the cell was "stinky."  He states that this cell had feces and blood smeared on the floor and walls.  According to Plaintiff there were bugs in the cell, and he was "bitten by mosquitos."  Plaintiff states that there was a drain in the floor of the cell that contained vomit, "nat's and bugs and blood with water in it."  He states that he "laid on a 3" inch concrete slab on the floor next to

[this] drain."  However, in the first amendment, he states that he did have a thin mat to lay on.

According to Plaintiff, he "had to take a dump two times At 11:30AM And 12:00PM without

wiping my behind up until C/O Ron Childers At 12:40pm or approximately about that time

turned on the water and gave me toilet paper to wipe my behind and gave me a pencil and a

grievance.  From that time he cut the water back off and from Mon-Wed I put 3 grievances in."

Plaintiff states that while in the detox cell, he "only showered one time."  Further, he refused his

medications and his food trays because of the unsanitary conditions, but "as the days proceeded I

was force to eat and take my medicine."  Plaintiff states that he was in this cell from "September

10, 12 Mon. At or Approximately about 10:30AM until Wed. At or about 2:45PM."

Plaintiff continues stating,

Once I was in this cell I alerted C/O Douglas Miles And C/O Mike Green on 1st And
2nd shift And thru the 3rd shift for the nurse to observe my bowels At or
approximately about 11:30AM that I use the restroom.  I told C/O Douglas about
3x's and Green about 2 or 3x's but Nurse Brown or Jamie never showed up Mon. At
or about 11:30AM to observe nothing.  Later on that same Day or early Tues. about
12:40AM C/O Ron Childers and Nurse Eric Willoby observe my bowels but it was
to late cause all of the waste was saturated.  Those 3 days they didnt observe me.
These officials has put punishment on me for me filling out a sick call that was 3 or
4 days old in which they deliberately no they had deficiencies in their med. care
system.  Once I was I was released from Iso., they still as I got copies didnt Answer
my sick calls for my back.

Plaintiff alleges that Defendants Pruitt and Brown "has inflicted un-Justified detention on

me, by putting me in a especially degrading or abusive conditions in which also has inflicted

back pain and hip spasms and a subjected substantial risk for future diseases as I lay on the floor

right by a drain filled with blood and vomit filling out my grievance forms on the floor 3 days

straight, 9-10-12-2012."  Plaintiff contends that their failure "to provide adequate medical care

for the Plaintiff violated and continue to violate the Plaintiffs right under the 8th Amend. to the

U.S. Constitution."  He further contends that Defendant Pruitt and Brown inflicted emotional

injury on him, deprived him of liberty, "and amenity and physical abuse resulting from their denial of due process in connection with the Plaintiff's grievance's proceedings." As to Defendant Pruitt, Plaintiff further contends that he denied Plaintiff due process.

Plaintiff states that Defendant Strode had knowledge of the "inflicted pain and suffering 9-10-11-12-1012 as I filed and exhausted them grievances in which Mr. Strode knew that this constitutional act was happen and he fail to avert this or act reasonably on this situation." Plaintiff asserts that Defendant Strode's "failure to take action to curb the physical abuse of prisoner's violated the plaintiffs right under the 8th Amend. to the U.S. and constituted an assault & battery under state law." He further claims that Defendant Strode was "grossly negligent in supervising subordinates who committed the wrongful acts . . . ."[1]

In his second amendment Plaintiff complains about another time that he was sent to the detox cell. On this occasion, January 21, 2013, Plaintiff alleges that he was at recreation playing basketball when a correctional officer ended the recreational time early because of the level of noise in the gym. Plaintiff states that he complied with the instruction. However, according to Plaintiff, while he was getting his clothes back on "the basketball rolled on the back of my leg so I Picked it up and pitched it back towards the goal." Defendants Lee and Whittaker witnessed

---

[1] Although not named as defendants in this action, Plaintiff requests monetary damages against correctional officers Green and Miles "for the physical and emotional injury and abuse from their failure to provide adequate medical care to the Plaintiff." Even if the Court were to construe the complaint as alleging a claim against correctional officers Green and Miles, the claim would be dismissed. The only factual allegations concerning these two officers is that Plaintiff alerted them to tell the "nurse to observe [my] bowels." Clearly, these facts do not rise to the level of deliberate indifference to a serious medical need which is required to state a constitutional violation. *See Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) ("In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

Plaintiff pitching the ball and "told [him] to stand against the wall in the hall they said I was going to the Detox cell for 24 hrs. for shooting the ball at our recreation time."

Plaintiff alleges that Defendants Lee and Whittaker "has subjected me to conditions so harsh as to comprise punishment . . . no sanitation no shower's or soap to wash our hands as we were force to eat our food and take our medication with blood feces on the floor and vomit in a nearby drain in the floor right beside where I slepted on the floor with a thin mat and a half sheet and Half Blanket with the air is about 30 degrees Celisus cold in which this cause my back and hip too get worser."

Plaintiff contends that the actions of Defendants Lee and Whittaker constituted "excessive confinement" in violation of the Eighth Amendment.  Further, he alleges that these Defendants "inflicted confinement in violation of the Due Process Clause of the 14th Amendment . . . and violation of the Due Process Clause in denying me a due process in connection with the grievance proceedings of the 14th amend. to the constitution of the U.S."

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. <u>ANALYSIS OF FEDERAL CLAIMS</u>

### A. *Official-Capacity Claims Against Defendants Strode And Pruitt*

Plaintiff sues Defendants Strode and Pruitt in their official capacities. He states that Defendant Strode is the Head Jailer at the WCRJ and Defendant Pruitt is the Medical Staff Coordinator at this same facility. Suing employees of the WCRJ in their official capacity is the equivalent of suing their employer, the WCRJ. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008). However, the WCRJ is not a "person" subject to suit under § 1983 because

municipal departments, such as jails, are not suable under § 1983. *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959 at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a sheriff's department may not be sued under § 1983). In this situation, it is Warren County that is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Warren County is a "person" for purposes of § 1983. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). The Court will therefore construe the official-capacity claims against Defendants Strode and Pruitt as brought against Warren County.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 694.

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Here, Plaintiff fails to allege any municipal policy or custom that he contends resulted in violations of his constitutional rights.

Therefore, the official-capacity claims against Defendants Strode and Pruitt will be **DISMISSED** from this action.

## B.  Defendant Southern Health Partners, Inc. and its Medical Staff

Plaintiff names Southern Health Partners, Inc. in the caption of his complaint.  However, in the parties section of his complaint he indicates he is suing "Southern Health Partners, Inc. is employed as Medical Staff at Warren Co. Regional Jail."  It is unclear whether he seeks to sue only Southern Health Partners, Inc., only its medical staff, or both.  Regardless of whom he is suing, this claim fails.

"It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).  For purposes of initial review, the Court will presume that Southern Health Partners, Inc. is a state actor.  A private corporation, like Southern Health Partners, Inc., "is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996).  The complaint does not allege that a policy or custom of Southern Health Partners, Inc. was the moving force behind any constitutional violations.

Additionally, if Plaintiff is seeking to sue certain persons who are on the medical staff of Souther Health Partners, Inc., the complaint fails to state a claim as to them.  It is clear that Plaintiff sues this entity or persons in only their official capacity.  Such a claim would be a claim

against the private corporation which, as discussed above, can only be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *Id.*

Accordingly, the claims against Defendant Southern Health Partners, Inc. and its medical staff will be **DISMISSED**.

### C. Individual-Capacity Claim Against Defendant Strode

Plaintiff appears to seek to hold Defendant Strode liable based on his position as Head Jailer at the WCRJ. However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 691; *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Shehee v. Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). To state a claim for relief, Plaintiff must show how each Defendant is accountable because that Defendant was personally involved in the acts about which Plaintiff complains. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).

9

Here, Plaintiff fails to plead any specific wrongdoing committed by Defendant Strode. He makes only general allegations in relation to this Defendant.  In his complaint Plaintiff states that he "sent a third grievance letting him know of this conduct by this medical staff and his C/O's . . . ."  He further states that Defendant Strode failed to "take action to curb the physical abuse of prisoner's . . . ."  In his first amendment to the complaint, Plaintiff states that Defendant Strode "was or had knowledge of this inflicted pain and suffering . . . ."  Additionally therein, he states that Defendant Strode "fail to avert this or act reasonably on this situation."  Nothing in the complaint or amendment sets forth any personal involvement by Defendant Strode in the alleged unconstitutional actions.  Plaintiff's assertions as to this Defendant involve a mere failure to act.   Plaintiff, therefore, has failed to state a claim upon which relief may be granted against Defendant Strode.

Accordingly the individual-capacity claims against Defendant Strode will be **DISMISSED** from this action.

### D. Individual-Capacity Claims Against Defendants Pruitt and Brown

#### 1. Conditions of Confinement

Plaintiff alleges that Defendants Pruitt and Brown had him placed in a medical observation detox cell for approximately 52 hours.  The water to the cell was turned off except for one occasion for Plaintiff to use the toilet.  Plaintiff alleges that the cell was "stinky."  He states that this cell had feces and blood smeared on the floor and walls.  According to Plaintiff there were bugs in the cell and he was "bitten by mosquitos."  Plaintiff states that there was a drain in the floor of the cell that contained vomit, "nat's," bugs, blood, and water.  He states that he "laid on a 3 inch concrete slab on the floor next to [this] drain."  However, in the amendment to the complaint, he does state that he had a thin mat to lie on.  According to Plaintiff, he had to

defecate on two occasions, but lacked toilet paper to clean himself.  Plaintiff states that while in the medical observation cell, he "only showered one time."

On initial review the Court will allow the individual-capacity claims for damages for allegedly subjecting Plaintiff to unconstitutional conditions of confinement to proceed against Defendants Pruitt and Brown.

### 2. Retaliation

Plaintiff states that on September 7, 2012, he submitted a sick call slip.  He contends that in retaliation for this submission, Defendants Pruitt and Brown transferred him to a medical detox cell where he remained from September 10-12, 2012.  The alleged conditions in this cell are described in the previous section of this Memorandum Opinion and Order.

On initial review the Court will allow the individual-capacity claims for damages for this alleged retaliation to proceed against Defendants Pruitt and Brown.

### 3. Due Process

Plaintiff alleges that his incarceration in the medical detox cell was a form of punishment that was imposed upon him without due process.  He further contends that he was placed in medical observation "without no knowledge."  It appears that he may be attempting to make both procedural and substantive due process claims.

On initial review the Court will allow the due process claims for damages against Defendants Pruitt and Brown in their individual capacities to proceed at this time.

### 4. Medical Treatment

Plaintiff was a pretrial detainee at the time of the events alleged.  As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him.  *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).  However, "[t]he Due Process Clause

of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff."  *Harrell v. Grainger Cnty., Tenn.*, 391 F. App'x 519, 522 (6th Cir. 2010); *Watkins v. City of Battle Creek*, 273 F.3d at 685-86 ("Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners.").  "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'"  *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hudson v. McMillian*, 503 U.S. 1 (1992); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010).  The objective component requires that the medical need be sufficiently serious.  *Rhodes v. Chapman*, 452 U.S. 337 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).  This component is contextually driven and is responsive to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. at 8.  The subjective component requires that the official's conduct be deliberately indifferent to Plaintiff's needs. *Farmer v. Brennan*, 511 U.S. 825; *Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt v. Reynolds*, 974 F.2d at 735.  Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 835.

12

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner."). Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### a. September 7, 2012

Plaintiff states that he completed a sick call slip dated September 7, 2012, and the medical staff "didnt even call [him]." Plaintiff does not provide the Court with any information as to the nature of the sickness for which he sought medical treatment at that time. Thus, he has failed to show that the medical need about which he complains is sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *Rhodes v. Chapman*, 452 U.S. 337; *Hunt v. Reynolds*, 974 F.2d at 735.

Accordingly, Plaintiff's claim against Defendants Pruitt and Brown regarding treatment of the September 7, 2012, sick call slip will be **DISMISSED** from this action.

### b. Subsequent to release from the detox cell

Plaintiff alleges that he suffered from "back pain and hip spasms" as a result of lying on a thin mat on the floor in the medical observation detox cell from September 10-12, 2012. He contends that once he was released from isolation "they . . . didn't Answer my sick calls for my

back."  Although Plaintiff refers to "they," the context of this paragraph connects this allegation to Defendants Pruitt and Brown.

The Court will allow the individual-capacity claim involving Plaintiff's medical treatment for back pain and hip spasms allegedly resulting from his September 2012 stay in the detox cell to proceed against Defendants Pruitt and Brown at this time.

### E.  Individual-Capacity Claims Against Defendants Lee And Whittaker

#### 1.  Conditions of Confinement

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment.  *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).  An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)).

The length of confinement is important in determining whether conditions of confinement meet constitutional standards.  *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.");  *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-

14

cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the

purportedly wrongful conditions for six days one year and ten days the next year); *Metcalf v.*

*Veita*, No. 97–1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day

denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend

contemporary standards of decency under the Eighth Amendment); *Whitnack v. Douglas Cnty.*,

16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement

and vomit not unconstitutional because conditions lasted only for 24 hours); *Bass v. Strode*,

1:12CV-P182-R, 2012 WL 5834123, at *3-4 (W.D. Ky. Nov. 16, 2012) (finding that isolation

for 72 hours in which plaintiff was forced to eat and sleep on the floor without cleaning supplies

was not a constitutional violation).

    With respect to Plaintiff's claim involving his stay in the detox cell on January 21, 2013,

about which he states he remained for 24 hours "with no sanitation no shower's or soap to wash

our hands . . . blood feces on the floor and vomit in a nearby drain in the floor right beside where

I slepted on the floor with a thin mat and a half sheet and Half Blanket with the air in about 30

degrees Celisus cold," the Court concludes that Plaintiff has failed to allege a constitutional

violation.  Although the conditions alleged were filthy and uncomfortable, the short duration

leads the Court to conclude that the conditions of confinement do not rise to the level of a

constitutional violation.

    Accordingly, the conditions-of-confinement claim against Defendants Lee and Whittaker

will be **DISMISSED** from this action.

### 2. Due Process

    Plaintiff alleges that Defendants Lee and Whittaker placed him in the detox cell without

"reasonable justification" in violation of the Due Process Clause.  A procedural due process

claim, at its core is "the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). "In order to determine what procedural protections are adequate, '[d]ue process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether . . . administrative procedures provided . . . are constitutionally sufficient requires analysis of the governmental and private interests that are affected.'" *Weekley v. Schouppe*, No. 11-1625; 2012 WL 5877584, at *5 (W.D. Pa. Nov. 20, 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The process required when a pretrial detainee is moved into more restrictive housing is not extensive; he is entitled to know the reasons for the transfer and an opportunity to respond. *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007).

Plaintiff was clearly provided with the reason he was placed in the detox cell. He was observed by Defendants Lee and Whittaker pitching a basketball back toward the goal after being directed to end the recreation time due to being "to loud in the gym." The government interest in maintaining prison security is substantial. *Id.* Furthermore, it is clear that Plaintiff had an opportunity to respond. He states that he spoke with Corrections Officer Russell about the event and refers to grievance proceedings involving the event.

Accordingly, the due process claim against Defendants Lee and Whittaker will be **DISMISSED** from this action. Leaving no further claims against them, Defendants Lee and Whittaker will be **DISMISSED** from this action.

## IV.  STATE-LAW CLAIMS

### A.  Assault And Battery

Plaintiff brings state-law claims for assault and battery against Defendant Strode. Under Kentucky law, "battery is any unlawful touching of the person of another, either by the

aggressor, or by any substance set in motion by him or her," and assault merely requires the threat of unwanted touching of the victim. *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. Ct. App. 2006). Plaintiff has failed to allege any unlawful touching by Defendant Strode or by any object set in motion by him. Further, he has not alleged any threat of unwanted touching made by Defendant Strode.

Accordingly, the state-law claims for assault and battery against Defendant Strode will be **DISMISSED** from this action.

**B. *Negligent Supervision***

Plaintiff alleges that Defendant Strode was grossly negligent in supervising subordinates who allegedly wrongfully placed him in the detox cell from September 10-12, 2012. The Court will allow this claim to proceed under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

## V. <u>ORDER</u>

**IT IS ORDERED** that four federal constitutional claims involving Plaintiff's incarceration in the medical detox cell from September 10-12, 2012, will proceed against Defendants Pruitt and Brown in their individual capacities: 1) retaliation; 2) conditions of confinement; 3) due process; and 4) medical treatment for Plaintiff's back pain and hip spasms allegedly resulting from Plaintiff's incarceration in the detox cell.

**ADDITIONALLY**, **IT IS ORDERED** that the state-law claim of negligent supervision will proceed against Defendant Strode.

**IT IS FURTHER ORDERED** that **all other federal and state-law claims and Defendants Southern Health Partners, Inc., Lee, and Whittaker are DISMISSED** from this action. The Clerk of Court is **DIRECTED** to terminate Defendants Southern Health Partners, Inc., Lee, and Whittaker as parties to this action.

17

The Court passes no judgment on the merits or ultimate outcome of this case.  The Court will enter a separate Scheduling Order governing the development of the continuing claims.

Date:  February 8, 2013

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        Warren County Attorney
4414.003

18