# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN

ANTHONY GRIFFIN                                                                  PLAINTIFF

v.                                                                     CIVIL ACTION NO. 1:12CV-P174-M

SOUTHERN HEALTH PARTNERS, INC. *et al*.                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Jamie Pruitt and Barbara Brown's motion for summary judgment (DN 89). Plaintiff has filed a response (DN 113) to which Defendants have replied (DN 114). This matter is now ripe for disposition. For the reasons set forth below, Defendants' motion for summary judgment as to the deliberate indifference claim regarding Plaintiff's alleged lack of medical treatment will be denied. Defendants' motion for summary judgment will be granted as to the retaliation, conditions of confinement, and due process claims.

## I. SUMMARY OF CLAIMS

After performing initial review of this case, the Court allowed the following four claims involving Plaintiff's incarceration in a medical detox cell from September 10-12, 2012, to proceed against Defendants Pruitt and Brown in their individual capacities: 1) retaliation; 2) conditions of confinement; 3) due process; and 4) denial of medical treatment for Plaintiff's back pain and hip spasms allegedly resulting from Plaintiff's incarceration in the medical detox cell.

Plaintiff states that he submitted two sick-call slips in September 2012, because he had blood in his stool and sputum. Thereafter, on September 10, 2012, Plaintiff states he was moved from his cell to a detox cell. According to Plaintiff, he was placed in the detox cell by Defendant Brown who had to obtain permission from Defendant Pruitt to do so. He contends that

Defendants Brown and Pruitt placed him in the detox cell in retaliation for submitting his sick-call slips and did so without providing him due process.

During the time he was in the detox cell, for approximately 55 hours from September 10-12, 2012, Plaintiff alleges in his complaint that he was subjected to conditions of confinement that were constitutionally impermissible. According to Plaintiff, there were bugs in the detox cell. He states that the cell smelled bad and had vomit in the drain in the floor. Additionally, Plaintiff states that feces and blood smeared on the floor and walls. Plaintiff states that he was only given a thin mat to lie on the concrete floor. During much of the time he was in the cell, according to Plaintiff's complaint, the water was turned off, and he was not given any toilet paper to clean himself.

Plaintiff states that being forced to sleep on the concrete floor with only a thin mat while in the detox cell caused him to suffer back pain and hip spasms. He alleges that Defendants failed to provide him with adequate medical care for these problems.

## II. SUMMARY OF ARGUMENTS

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to all of the claims against them; thus summary judgment should be entered in their favor. Further, Defendants argue that if the Court were to address the substance of the claims against them, the claims should be dismissed. As to the retaliation claim, Defendants argue that Plaintiff was placed in the detox cell for medical observation as a result of symptoms about which he complained, not in retaliation for submitting sick-call slips. Concerning the conditions-of-confinement claim, Defendants argue that the conditions about which Plaintiff complains do not amount to a constitutional violation. Defendants argue that the substantive due process claim fails because there is an alternative explicit constitutional provision under which Plaintiff's complaints should be addressed. As to the procedural due process claim, Defendants argue that

being placed in segregation for the minimal amount of time about which Plaintiff complains is an ordinary incident of prison life which does not violate the U.S. Constitution. Finally, as to the medical treatment about which Plaintiff complains, Defendants argue that Plaintiff received constitutionally adequate treatment.

In his response, Plaintiff primarily addresses the exhaustion argument. Plaintiff contends that the grievance policy at WCRJ was revised in July 2010. He argues that he completed all of the steps required for exhaustion under the revised policy. Further, Plaintiff reiterates that he "was retaliated against for submitting a sick-call request by being put into unsanitary confinement, being denied his due process, and was a victim of medical negligence by being denied proper care." However, Plaintiff fails to include anything but this statement in addressing the merits of his claims.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Id.* The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### IV. ANALYSIS

*A. Exhaustion*

Prisoner civil-rights cases are subject to the Prison Litigation Reform Act's (PLRA) mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199 (2007). The Court struck down the Sixth Circuit's rule which placed the

4

burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. at 216. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing suit. They state that the Warren County Regional Jail [WCRJ], where Plaintiff is incarcerated and where the events about which he complains transpired, has a grievance procedure that is not complete until a grievance is appealed to the County Judge Executive of Warren County. Defendants argue that Plaintiff submitted three grievances about his placement in the detox cell, but they were all submitted to the Chief Deputy Jailer, and none of the grievances were appealed to the County Judge Executive. In support of their argument, Defendants provided the following: (1) an affidavit of Jackie Strode, the Jailer at WCRJ in which he attached a copy of the "Inmate Rights & Rules and Services Offered to Inmates" [Handout] issued to Plaintiff; (2) another affidavit of Jackie Strode in which he attached the grievances filed by Plaintiff; and (3) a copy of the transcript of Plaintiff's deposition.

In the WCRJ rights and rules Handout issued to Plaintiff, there is a section regarding grievances. It states as follows:

> Inmates are allowed to submit grievances if he/she believes he/she has been subject to abuse, harassment, abridgement of civil rights or denied privileges as specified in the posted rules. The grievance is to be made in the form of a written statement, sealed in an unstamped envelope and addressed to the Jailer. Grievance forms are available and must be signed by the inmates. If not signed, it will not be answered. It must be printed/written legibly. The Grievance will be answered by a Chief Deputy of the Jailer's Designee. If not satisfied with the disposition/answer of the Chief Deputy/Designee, the inmate has two (2) days to appeal to the Jailer. If not satisfied with the Jailers disposition/answer, the inmate

5

has five (5) days to appeal to the County Judge Executive/Warren County Fiscal Court, 429 E. 10th St., Bowling Green, KY 42101.

Plaintiff signed that he had received a copy of the Handout on February 11, 2010. Plaintiff testified at his deposition that he received a copy of the rules and regulations that included the handling of grievances at WCRJ.

In his response to Defendants' motion for summary judgment, Plaintiff states that the WCRJ grievance policy was revised in July 2010. Plaintiff attached a copy of the revised policy to his response (DN 113-1, p. 4). The revised policy states as follows:

> All grievances must be filed within forty-eight (48) hours of the event or act that you are complaining about. The Jailer or his/her designee will respond to this grievance within ten (10) days from its receipt. In the event that you do not receive a response within ten (10) days then your grievance has been denied. If you are not satisfied with the initial response to your grievance, you may appeal to the Jailer or his/her designee within forty-eight (48) hours of the initial response. The Jailer or his/her designee will respond to your appeal within ten (10) days. If you do not receive a response within ten (10) days, the appeal has been denied.

Further, the WCRJ grievance forms completed by Plaintiff set forth this exact language. The revised policy and the grievance form do not include appealing a grievance to the County Judge Executive as a step in the grievance process. The final step of the grievance process according to the revised policy is an appeal to the Jailer.

In his deposition, Plaintiff stated that while he was in the detox cell, he submitted three grievance forms. Copies of these grievances were filed by both Plaintiff and Defendants. A review of the grievances reveals that Plaintiff submitted three grievances complaining of being placed in the detox cell and the conditions therein. The first grievance is dated September 11, 2012. It was responded to by Defendant Pruitt on that same date. In her response, Defendant Pruitt explained that Plaintiff had been placed in the detox cell for medical observation because of his complaints about blood in his sputum and stool. Plaintiff stated in his deposition that he

6

received the response to this grievance. The second grievance is also dated September 11, 2012, but is dated that it was received by WCRJ on September 12, 2012. It is addressed to "whoever that's over the Grievance Board." This second grievance was responded to on September 12, 2012, by Defendant Pruitt who noted that Plaintiff's prior grievance addressed the issues raised in this second grievance. Plaintiff stated in his deposition that he never received any response to this grievance. According to the policies at WCRJ, if no response to a grievance is received within 10 days of its receipt, then the grievance has been denied. Thus, the second grievance was deemed denied after 10 days. The third grievance is dated September 12, 2012, and is dated that it was received by WCRJ on September 13, 2012. This third grievance is addressed to "the Proprietor-Jackie Strode." It was responded to the same date it was received, and Plaintiff stated in his deposition that he received the response when he was released from the detox cell.

Plaintiff also filed two grievances in which the primary complaint he raised were his back pain and/or hip problems resulting from being in the detox cell. The first is dated October 7, 2012, and the second is dated October 10, 2012. In the second of these grievances, Plaintiff stated that he was responding to the response to his prior grievance. The October 7, 2012, grievance was responded to on October 9, 2012, and the October 10, 2012, grievance was responded to on October 11, 2012. Additionally, there was another grievance filed by Plaintiff on December 18, 2012, in which he raised several issues and mentioned the ongoing back and hip pain he had from being in "[i]solation for 3 days . . . ." This grievance was responded to on December 20, 2012.

To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other*

*grounds by Woodford v. Ngo*, 548 U.S. 81. A prisoner does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal court."). If the final step of the grievance process was to appeal to the County Judge Executive/Warren County Fiscal Court, then Plaintiff failed to exhaust his grievances since he failed to take this final step for any of the grievances he submitted. However, if the final step of the grievance process was appeal to the jailer, as it appears that it was at the time relevant to the filing of Plaintiff's grievances, it is clear that Plaintiff exhausted his administrative remedies before filing this civil action. As to Plaintiff's grievances about the conditions-of-confinement in the detox cell, Plaintiff's third grievance dated September 12, 2012, was specifically addressed to "the Proprietor-Jackie Strode." Regarding the grievances for his back and hip problems, the second grievance filed by Plaintiff states that he is "responding" to Defendant Pruitt's response to his initial grievance.

Clearly, Defendants have failed to meet their burden of demonstrating the absence of a genuine issue of material fact as to the issue of exhaustion. Thus, Defendants are not entitled to summary judgment based on a failure to exhaust.

However, Defendants have also argued the merits of Plaintiff's claims. As to three of the four claims, for the reasons discussed below, Defendants will be granted summary judgment.

## B. *Retaliation*

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in

8

protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* If the prisoner is able to prove that his exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct, the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct. *Id.* at 399.

Plaintiff alleges that his placement in the detox cell was in retaliation for filing two sick-call slips in September 2012, about blood in his stool. He asserts that because he was not put in the detox cell for observation more closely to the time his sick-call slips were submitted and because he received no real medical monitoring during his time in the detox cell, the real reason he was placed there is retaliation. Further, Plaintiff states that in 2009 he was allowed to remain in his cell to provide a stool sample.

According to Plaintiff's deposition testimony, after he was placed in the detox cell, the guards told him that he was put there for medical observation and that the water was turned off so that Plaintiff would not flush his stool. Plaintiff stated in his deposition that Defendant Brown came to the detox cell that first day and explained that Plaintiff had been placed in the detox cell because he complained about blood in his sputum and stool and they wanted to make sure the samples they obtained from him were not from another inmate. She explained that the water was cut off so that they could see if there was blood in Plaintiff's stool. Plaintiff also stated in his deposition that one or two nurses came to the detox cell to see him on the first and second days he was in there. Defendant Pruitt, Plaintiff stated, came to Plaintiff's cell the morning he was released from the detox cell and informed him that he was being released because there was no

9

evidence of blood in his stool or sputum. Plaintiff stated at his deposition that no one ever told him that he was placed in the detox cell for punishment.

The grievances Plaintiff filed about being in the detox cell clearly indicate that he was aware he was placed there for medical observation and that the medical reasons for such placement had been explained to him. Further, according to the response to Plaintiff's grievance submitted on September 11, 2012, Plaintiff was placed in medical observation because he complained of blood in his sputum and stool. He was instructed to call for a nurse for any bowel movements or sputum and was informed that "medical" needed to see the blood. A nurse practitioner was to follow-up with Plaintiff.

In order for Plaintiff to avoid summary judgment as to his retaliation claim, "some evidence of retaliatory motive is required: '[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim.'" *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation and internal quotation marks omitted)). The Sixth Circuit has "found that 'the temporal proximity between . . . filing . . . grievances and the [adverse action] provides some circumstantial support for a causal connection' but [has] been reluctant to find that such evidence without more can demonstrate 'that the filing of grievances was a substantial or motivating factor.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010) (quoting *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)). Further, Plaintiff relies solely on the unsupported statements he made in his complaint. In deciding whether summary judgment is appropriate, the Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). Plaintiff has failed to set forth sufficient evidence to support retaliatory motive.

Therefore, summary judgment in favor of Defendants on this issue is appropriate and will be granted.

*C. Conditions of Confinement*

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment.[1] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the Eighth Amendment which requires that they be housed in a manner most pleasing to them . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

Plaintiff alleges in his complaint that there were bugs in the detox cell. His complaint states that the cell smelled bad and that feces and blood were smeared on the floor and walls. He further states that there was vomit in the drain in the floor. In his complaint, he also states that he was only given a thin mat to lie on the concrete floor. During much of the time he was in the cell, according to Plaintiff's complaint, the water was turned off, and he was not given any toilet paper to clean himself. However, when questioned about the conditions in the detox cell during

---

[1] "The Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff." *Harrell v. Grainger Cnty., Tenn.*, 391 F. App'x 519, 522 (6th Cir. 2010).

his deposition, Plaintiff clarified that some of the conditions about which he complains did not occur during his entire stay in the detox cell. According to Plaintiff's deposition testimony, during the time he was in the detox cell, the water was turned on at one point for him to shower and wipe up the cell, he was brought water to drink on a couple of occasions, his food trays were brought to him, the nurses brought around his medications, and he was provided a mat to sleep on. Plaintiff remained in the detox cell for approximately 55 hours.

With respect to Plaintiff's claim that he was subjected to unconstitutional conditions during his approximately 55-hour stay in the detox cell, the Court concludes that Plaintiff has failed to allege a constitutional violation. The conditions to which he alleges he was subjected may have been unpleasant, but were not unconstitutional. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise did not rise to constitutional magnitude, where the prisoner was subjected to the purportedly wrongful conditions for only six days one year and nine days the next year); *Metcalf v. Veita*, No. 97–1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (finding deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (finding that a five-day stay in a filthy, roach-infested cell was not unconstitutional); *McNatt v.*

*Unit Manager Parker*, No. 3:99CV1397AHN, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (finding the totality of conditions in the restrictive housing unit to which plaintiffs were subjected, including: stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions, while not pleasant, did not rise to the level of an Eighth Amendment violation).

Accordingly, summary judgment will be granted in favor of Defendants on the conditions-of-confinement claim.

## D. *Due Process*

The Fourteenth Amendment prohibits any State from depriving "any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The first inquiry in a Fourteenth Amendment due process claim is whether the interest at stake is within the Fourteenth Amendment's protection. *Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). "Only after reaching a conclusion that the interest claimed is within that protection does this court consider the form and nature of the process that is due." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002).

"In order to determine whether segregation of an inmate from the general prison population involves the deprivation of a state-created liberty interest protected by the due process clause, courts are to determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). "[U]nder *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence . . . ." *Id.* Plaintiff does not allege that his placement in the detox cell affected the duration of his sentence. Thus, his allegation of placement in the detox cell for 55 hours fails to allege any interest protected by the constitutional guarantee of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that a 61-day stay in administrative segregation was not atypical and significant); *Rogers v. Johnson*, 56 F. App'x 633, 636 (6th Cir. 2002) (finding that the prisoner's extended stay in administrative segregation did not give rise to a protected liberty interest); *Jones v. Baker*, 155 F.3d at 813 (finding that segregation for 30 months did not create a liberty interest violative of the Due Process Clause); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (finding that neither eight months administrative segregation nor 14-days disciplinary segregation constituted an atypical and significant hardship on inmates); *Jackson v. Hopkins Cnty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. Nov. 9, 2012) (finding that "[p]laintiff has not stated a due process claim because freedom from placement in segregation is not a protected liberty interest as it does not 'impose atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'").

Accordingly, summary judgment will be granted in Defendants' favor as to Plaintiff's due process claim.

*E. Medical Treatment*

Plaintiff was a pretrial detainee at the time of the events alleged. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). However, "[t]he Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff." *Harrell v. Grainger Cnty., Tenn.*, 391 F. App'x 519, 522 (6th Cir. 2010); *Watkins v. City of Battle Creek*, 273 F.3d at 685-86 ("Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825; *Hudson v. McMillian*, 503 U.S. 1; *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). The objective component requires that the medical need be sufficiently serious. *Rhodes v. Chapman*, 452 U.S. 337 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). This component is contextually driven and is responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. at 8. The subjective component requires that the

15

official's conduct be deliberately indifferent to Plaintiff's needs. *Farmer v. Brennan*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt v. Reynolds*, 974 F.2d at 735. Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. at 835.

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner."). Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

After performing initial review, the Court allowed Plaintiff's claim of deliberate indifference to his alleged back and hip pain after being released from the detox cell to proceed. As to this claim, Plaintiff's allegations in the complaint were not very detailed. He claimed that he suffered "back pain and hip spasms" as a result of lying on a thin mat on the floor in the medical observation detox cell from September 10-12, 2012. He further alleged that after he was released, Defendants Pruitt and Brown did not answer any of his sick-call slips.

Defendants contend that Plaintiff's claim of inadequate treatment is insufficient as a matter of law or, alternatively, is merely a difference of opinion regarding his medical treatment. Defendants state that Plaintiff "admitted that from 9-15-12 until 6-10-13, 'medical staff' such as nonparty nurse Kim Keith and nonparty nurse Crystal Lowe provided him with ibuprofen

16

medication for his back." Defendants point out that when "Plaintiff complained that the medication was not working . . . an x-ray was performed." Subsequent to the x-ray, Defendants state, Plaintiff was given "another two mattresses." Defendants did not file any affidavit or a copy of Plaintiff's medical records in support of their motion.

However, a copy of Plaintiff's deposition testimony was filed by Defendants in support of their motion for summary judgment. Included in the deposition testimony is a line of questioning about Plaintiff's treatment for his back pain and hip spasms. According to Plaintiff, between the time he was released from the medical detox cell, September 12, 2012, and June 2013, he submitted at least nine or ten sick-call slips. It appears that during this time Plaintiff was given ibuprofen on occasion, but despite him repeatedly informing Defendants and others that this was not helping his problem, he was given no other treatment. Plaintiff states that during this time Defendants and other medical personnel at WCRJ repeatedly informed Plaintiff that he could not be treated by the institution for his back and hip problems. According to Plaintiff, Defendants told him that they could not treat him for his back problem "because we didn't cause the [] injury that was placed up on your back." Eventually, on June 10, 2013, Plaintiff had an x-ray of his lower back that showed he had a "lower outer split disc." Following the x-ray, Plaintiff was given "another two mattresses" that "helped a little bit." He was allowed to have ibuprofen, which, according to Plaintiff, did not help his problem. Plaintiff states that he was told that he could get no other treatment unless his family arranged for a private doctor to come to the institution to evaluate him and treat him.

Although it is not disputed that Plaintiff was given ibuprofen, and eventually an x-ray and an extra mattress, Defendants have not met their burden of demonstrating the absence of a genuine issue of material fact as to the issue of Plaintiff's alleged lack of medical treatment and

17

deliberate indifference.  Defendants contend that Plaintiff can only show a difference in opinion regarding the treatment he received.  However, Plaintiff stated in his deposition that when he sought more than just ibuprofen, which he repeatedly informed Defendants did not help him, he was informed that he could not be given any treatment unless he got it from outside the institution.  There may well be a permissible explanation for these statements, and Plaintiff may well have been receiving medical treatment; however, Defendants have not met their burden of so showing as they have provided no medical records or affidavits in support of their argument.

Accordingly, Defendants' motion for summary judgment as to the deliberate indifference claim regarding Plaintiff's alleged lack of medical treatment will be denied.

## V.  ORDER

For the reasons stated above, Defendants' motion for summary judgment (DN 89) is **GRANTED** as to the retaliation, conditions of confinement, and due process claims. Defendants' motion for summary judgment is **DENIED** as to the deliberate indifference claim regarding Plaintiff's alleged lack of medical treatment.

Date:  November 12, 2014

                                            **Joseph H. McKinley, Jr., Chief Judge**
                                            **United States District Court**

cc:      Plaintiff, *pro se*
           Counsel for Defendants
4414.003